Adams, J.
The case of the State of Ohio ex rel, Horace W. Stafford, Prosecuting Attorney of Clark county, against John M. Good as mayor of the city of Springfield, is a proceeding brought under the provisions of the corrupt practices act, commonly known as the Garfield law,against John M. Good, *387 charging him with having violated the provisions of the Garfield law in numerous instances, and asLing that by reason of his alleged violations of that law his election to the office of mayor of the city of Springfield be. declared void and the office declared vacant.
These allegations of the violations of the Garfield law are set out in the plaintiff’s petition and an amendment thereto. The defendant, in answering, admitted many of the allegations of the petition and amendment thereto, but denies generally all of the allegations relating to any violations of the Garfield law. It is on the'issues made by these pleadings, and the evidence, that this case has .been submitted to this court.
The recent decision of the supreme court in a case that went to that court from Adams county, makes it unnecessary for this court to consider many questions that might have been asked in this case as to the constitutionality of the Garfield law, for that decision of the supreme court stands in its entirety. It is simply the duty of this court to determine those facts upon the evidence,and having determined those facts, to determine whether,as a matter of law, a judgment of oust.er should be rendered against the defendant. Good was elected mayor of the city of Springfield at the election in the spring of 1897. His statement of expenses filed under the law shows an expenditure of $5 in securing the nomination, and an expenditure of $45, in securing his election. It is claimed that he exceeded this latter amount very greatly in securing his election to the office. It appears in proof here that shortly after his nomination for the office of mayor, that the central committee was to sofSteit for him; whether it was the central committee of Clark county, or the central committee of Springfield, there seems to be a large discrepancy among the witnesses. One witness testified that it was the central committee of the county, which chose a sub-committee; and another an ex *388 ecutive committee for the management of the campaign in the city of Springfield.
It is’ claimed on the one side that Good was responsible for the expenditures made by this committee, and it is claimed on the other hand that this executive committee was the regular appointed committee andchosen representative of the party; that they were not the agents of the candidate within the meaning of the act.
It seems to the court, that while a candidate may pay in an assessment to the committee of his party and have nothing further to do with the management and conduct of the campaign, that'the committee would not be, or the members of the committee would not be. his agents in the management of that campaign. But the question of agency is a question of fact, and the candidate for the office can make the regular chosen committee of his party his agents in the management of his campaign for that office.
The nature of the testimony submitted to the court makes it unnecessary that I should take up and attempt to review the conflicting statements made by various witnesses here. This court has considered the testimony in the light of all the circumstances; the interests of the witnesses on either side; the importance of the issue to the defendant, Good; the importance of the issue to the public if there have been violations of the law of the state, and that the penalty and punishment of that law should be imposed. We have weighed the evidence and considered the law of ‘all those facts and circumstances. This proof establishes beyond controversy that Elliot and Burnett were the agents of Good in the management of this campaign; this proof establishes beyond controversy that Good expended money himself and through his agents,Elliott and Burnett, for the furtherance of his election; that he paid to Edward Garrett, through Elliott, for the furtherance of his election the sum of $25; that he himself paid to John A. Wright, for the *389 same purpose, the sum of $7.50; that he paid to T. A. Gross for the same purpose the sum of $10.00, and that he paid Captain Rudd, the captain of the colored military company, the sum of $50.00 for the purpose of the furtherance of his election, and that he received $100.00-to be used for the furtherance of his election from a man by the name of John Snyder, and that sum did not go into the hands of the treasurer of the committe, but that it was paid out to Armstrong, and by him expended as all this money was expended, in buying liquors and paying voters for the election.
We further find that when Good was present, and conducting his campaign for the election,and making the rounds to the various saloons in this city, that Burnett was buying for his benefit the beer at Gaier's saloon, which amounted to $35.00; that he paid for beer at the dance of the German Red Gross Society, $45.00; that Elliott pa*id for the same purpose at Grimmer’s saloon the sum of $6.00, and on the same occasion Burnett paid $5.00. These sums that were expended by Burnett and Elliott for beer, were on occasions when Good was present, when the expenditure was made in the furtherance of his election to the office of mayor of the city of Springfield.
The court holds- that it makes no difference, so far as the law is concerned, whether Good paid out money directly and out of his own pocket, or whether it was. paid for him and for his benefit by his friends and agents, Elliott and Burnett.
These amounts make a total of $283.50,-none of which is accounted for in Good’s certificate of his campaign expenses. This amount exceeds $139.00, considered to be the limit of his lawful expenses in this campaign, by $144.50.
So we find that this certificate of expenses was wilfully false in the particulars that it does not state these amounts that I have enumerated,' and we also find that all these expenditures were for illegal purposes.
Horace W. Stafford, and Heifer & Heifer, for State.
Bowman & Bowman, and Hagan & Hagmi, for Defendant.
Three other matters were insisted upon in the hearing as to ante-election promises claimed to have been made by Good. One claimed to have been made to Bolán, one to the members of the Trades Assembly,and one to the witness Hartman.
We think that the proof fails as to the alleged promise to the witness Hartman, but we think the greater weight of the evidence is in favor of the contention that Good did promise to Bolán a place as an active member on the board of public affairs, and that he did make to the members of the Trades Assembly the promise to appoint a man to a position on some board, out of a list of men to be selected toy them.
We find that those promises were in fact made, and that those promises,as a matter of law,were all illegal; that they were such as under the Garfield law would render Good ineligible to be elected to the office, and under section 11 of the statute, it makes his election void and the office of mayor of the city of Springfield vacant, and it is the judgment of the court, that for these various violations of the provisions of the so-called Garfield law, that the election of Good to the office of mayor of the city of Springfield is declared void,and the office is adjudged to be vacant.
A judgment of ouster will be rendered.'